UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |  |
|---|---|---|
| HUTTON COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| COMMUNICATION | ) | 3:19-CV-1906-G |
| INFRASTRUCTURE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff Hutton Communications, Inc. ("Hutton")'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff's Motion for Summary Judgment ("Motion for Summary Judgment") (docket entry 10). For the reasons stated below, Hutton's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

A full recitation of the factual and procedural background of this case is provided in the court's order issued on April 7, 2020. *See generally* Order (docket entry 21). Hutton sold telecommunications equipment to defendant Communication Infrastructure Corporation ("CIC"), and between August 25, 2017 and February 26, 2018, CIC amassed a bill of $195,856.22. Plaintiff's Brief in

Support of Motion for Summary Judgment, ¶ 1 ("Brief in Support") (docket entry 11); Appendix to Plaintiff's Motion for Summary Judgment at App. 5 ("Appendix in Support") (docket entry 12).[1] CIC would request goods from Hutton via an unsigned purchase order, and Hutton would mail CIC the goods with an unsigned invoice. Defendant's Response to Plaintiff's Motion for Summary Judgment, ¶ 1 ("Defendant's Response") (docket entry 15).

On the purchase orders that CIC sent to Hutton, the "Terms and Conditions" state that an undisclosed "Agreement" between CIC and Hutton is incorporated, and acceptance of the purchase order by Hutton means acceptance of the terms of that "Agreement." Appendix in Support at App. 6. Hutton asserts that the "Agreement" is a signed credit agreement from May 17, 2017; CIC argues that Hutton's assertion incorrect. Ex. 1 to Plaintiff's Supplemental Documentation ¶ 6 ("Supplemental Documentation") (docket entry 22); Ex. 1 to Defendant's Supplement to its Response to Plaintiff's Supplemental Documentation ¶ 4 ("Supplement to Response") (docket entry 24). Despite this minor discrepancy, the invoices that Hutton sent to CIC with the goods state that "[i]n all cases where the purchase order terms conflict with those of Hutton, Hutton's terms and conditions prevail." Appendix in Support at App. 7. CIC accepted the goods and admits that it owes

---

[1] Citations to the Appendix in Support refer to the page numbers in the bottom right hand corner of the document.

Hutton the full amount, *i.e.*, $195.856.22.  Appendix in Support at App. 38.

In this court's April 7, 2020 order, the court pointed out deficiencies in Hutton's brief in support, and gave Hutton the opportunity to supplement its motion.  Hutton filed supplemental briefing on April 17, 2020.  *See* Supplemental Documentation.  The court also afforded CIC the opportunity to respond to Hutton's supplemental briefing.  Order at 9.  On April 27, 2020, CIC filed a response.  *See* Defendant's Response to Supplemental Documentation (docket entry 23).  On April 28, 2020, CIC filed an untimely supplement to its response to supplemental documentation.  *See* Supplement to Response.

The parties having filed their supplemental briefing, Hutton's motion for summary judgment is now ripe for decision.

## II.  ANALYSIS

### A.  Summary Judgment Legal Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive

---

[2] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in its favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the

summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### B. Applicable Substantive Law

Hutton's invoices to CIC state that all disputes are governed by Texas Law. Appendix in Support at App. 7. Furthermore, a federal district court sitting in diversity applies state substantive law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

### C. Application

#### 1. Hutton's Claim for Breach of Contract

In Texas, there are four essential elements to a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). "When parties enter into a contract for the sale of goods, Chapter 2 of the Texas Business and Commerce Code controls the conduct of the parties." *Glenn Thurman, Inc. v. Moore Construction, Inc.*, 942 S.W.2d 768, 771 (Tex. App.-Tyler 1997, no writ). CIC argues that the plaintiff "has failed to present any contract signed by the parties that set[s] forth specific terms for a timeframe for required payments." Defendant's Response, ¶ 7. CIC also alleges that the "Agreement" that

its purchase orders reference is an "essential element" of the plaintiff's proof. *Id.*, ¶ 6. In essence, CIC appears to argue that (1) there is no valid contract and(2) even if there is a contract, the terms are unclear. CIC does not dispute that it owes Hutton $195,856.22. Appendix in Support at App. 38. Nor does CIC dispute that it accepted the goods after Hutton had mailed them. *Id.* Thus, the only question is whether a contract exists and, if so, what the terms of the contract are. The court concludes that Hutton has proved the existence of a valid contract between the parties and that the terms are sufficiently clear. Each of these conclusions will be discussed in turn.

Under Texas law, a contract for the sale of goods may be formed "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Tex. Bus. & Com. Code § 2.204. As laid out in this court's April 7, 2020 order, Hutton and CIC conducted their business as follows: CIC would request goods from Hutton via an unsigned purchase order, and Hutton would mail CIC the goods with an unsigned invoice. Order at 2. Hutton concedes that the parties did not execute a traditional signed contract; however, "it is not Hutton's normal business practice to enter into such agreements with vendors when creating a business relationship." Supplemental Documentation at 1.

The fact that the parties did not execute a signed contract is not fatal to

Hutton's claim. The Texas Business and Commercial Code explicitly states that (1) "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods," and (2) a contract that does not satisfy the statute of frauds "but which is valid in other respects is enforceable with respect to goods for which payment has been made and accepted, or which have been received and accepted." Tex. Bus. & Com. Code §§ 2.206(a)(2), 2.201(c)(3).

CIC mailed numerous purchase orders to Hutton, all of which fit squarely into the Texas Business and Commerce Code's language that such a purchase order can be accepted by prompt shipment of goods. *See* Appendix in Support at App. 6, 11, 12, 17, 19 & 20. Hutton accepted by filling orders and promptly shipping conforming goods to CIC. *Id.* at App. 7-9, 10, 13-16, 18, 21-23. CIC admits that it placed the orders and accepted the goods. *Id.* at App. 38. Furthermore, CIC admits that it made partial payments for some goods, and that it still owes $195,856.22 to Hutton. *Id.*; Defendant's Response, ¶ 8. In its response, CIC even "admits accepting goods and/or services provided by [Hutton] without fully compensating [Hutton]." Defendant's Response, ¶ 2. It is thus evident that CIC placed numerous orders for telecommunications equipment with Hutton, that Hutton accepted CIC's offer to purchase by mailing the equipment to CIC, and that CIC accepted delivery of the

equipment. The court therefore concludes that a valid contract was formed between CIC and Hutton. See *Baylor University Medical Center v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 754-55 (N.D. Tex. 2004) (Fish, Chief J.) (citing *Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2001) (finding that a court "may determine, as a matter of law, that multiple documents compromise a written contract, [and] in appropriate instances . . . construe all of the documents as if they were part of a single, unified instrument.").

Despite CIC's admission that it owes the plaintiff $195,856.22, CIC advances several arguments why it should not have to pay. These arguments include: a valid contract does not exist, CIC's business revenue has been declining, and the terms of the contract are unclear. Defendant's Response at 2-3. As discussed above, Hutton has established the existence of a valid contract, and the fact that CIC's revenues have been declining does not relieve CIC of its obligation to pay for the goods that it accepted. The court will now turn to the terms of the contract.

CIC makes two arguments in support of its contention that the terms of the contract are unclear. First, CIC avers that the "Agreement" referenced in the purchase orders that CIC sent to Hutton is "an essential element of [Hutton's] proof" and "a material issue of fact exists with respect to this matter." *Id.* at 2. In response, Hutton argues that the "Agreement" is a credit agreement executed by the parties on May 17, 2017. Supplemental Documentation at 2. Instead of clarifying

what the "Agreement" is, CIC maintains that the May 17 credit agreement "is not evidence of an Agreement pertinent to the current lawsuit." Response to Supplemental Documentation, ¶ 8. CIC also submitted a declaration of the president of CIC, Marty Snyder, where he writes: "[t]he Agreement referenced in invoices and/or purchase orders dated from August 25, 2017 to February 26, 2018, is not the *Account Information and Credit Agreement* dated May 17, 2017 provided by Hutton to this Court in its *Supplement to its Motion for Summary Judgment*." Supplement to Response, ¶ 4.

CIC has now had two opportunities to clarify exactly what this "Agreement" is, but in each instance has failed to demonstrate the meaning of the term "Agreement." Instead, CIC has played a game of smoke and mirrors, attempting to create an issue of material fact where none exists. CIC references the "Agreement" in its own purchase orders; thus, it is perplexing why CIC does not simply produce the "Agreement." At the summary judgment stage, CIC, as the nonmoving party, must point to evidence in the record that is sufficient to support the resolution of the material factual issues in its favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)). CIC's unsupported argument fails to establish even a "metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Accordingly, the court rejects CIC's first argument that the

meaning of the term "Agreement" is a "material fact."

Even if CIC had produced the "Agreement," however, it is doubtful that that would have led to a different result. CIC argues that the payment terms in the contract are unclear; the court, however, concludes that the terms are sufficiently clear in the record as it stands. On the purchase orders that CIC sent to Hutton, underneath the account number, the order states "Terms[:] Net 30." *See* Appendix in Support at App. 6, 11, 12, 17, 19 & 20. The invoices that Hutton sent to CIC with the goods state "PAYMENT TERMS[:] Net 60." *Id.* at App. 7-9, 10, 13-16, 18 & 21-23. Hutton has defined this term to mean that the payment is due within 60 days from the date on which the invoice was submitted. Plaintiff's Reply in Support of its Motion for Summary Judgment, ¶ 2 ("Plaintiff's Reply") (docket entry 18). CIC does not dispute this definition; indeed, "net 30" or "net 60" are common phrases used in commercial dealings, meaning that payment is due within 30 or 60 days of the order being filled or delivered. See *RK Greenery Inc. v. Texoma Plant & Tree Farms, LLC*, No. 06-08-00126-CV, 2009 WL 1514927, at *1 (Tex. App.-Texarkana 2009, no pet.) (defining net 30 and net 45 as requiring payment within "thirty or forty-five days of delivery"); see also *Thomas v. National Collector's Mint, Inc.*, No. CV H-18-0348, 2018 WL 6329841, at *7 (S.D. Tex. Dec. 4, 2018) (noting that acceptance of additional or different terms can be found if the opposing party continues to purchase or place orders from the seller).

Here, it does not matter whether the term in the contract is net 30 (as listed on CIC's purchase orders) or net 60 (as stated on Hutton's invoices). CIC clearly breached its contract with Hutton when it failed to pay for goods it received, at the very latest, 60 days after accepting those goods. Accordingly, the court concludes that the terms of the contract between Hutton and CIC are sufficiently clear. Regardless of which payment term is applicable, CIC failed to pay Hutton in a timely fashion and thus breached its contract with Hutton.

### 2. Hutton's *Quantum Meruit* Claim

Because the court is granting summary judgment in favor of Hutton on Hutton's breach of contract claim, the court need not reach the merits of Hutton's claim for recovery under a theory of *quantum meruit*.

### III. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment pursuant to Rule 56 is **GRANTED**. Judgment will be entered in favor of plaintiff Hutton against defendant Communication Infrastructure Corporation. Within ten days of this date, counsel for Hutton shall submit a proposed form of judgment in conformity with this ruling.

**SO ORDERED**.

May 13, 2020.

_____
A. JOE FISH
Senior United States District Judge